## 52013. KINSEY et al. v. FIDELITY NATIONAL BANK.

PANNELL, Presiding Judge.

An action was brought on August 28, 1975, upon a note executed by the corporate defendant-appellant and

the suretyship or guaranty agreement relating thereto executed by the individual defendant-appellant, who was the president of the corporate defendant, seeking recovery upon the note and foreclosure of an alleged security interest. The foreclosure of the security interest was eliminated from the case. Paragraph 4 of the complaint alleged: "The Defendant Mother's Bottle Shoppe, Ltd., as maker and the Defendant William G. Kinsey, as guarantor are indebted to the Plaintiff upon a promissory note dated September 25, 1974, in the principal amount of $48,150.00, with interest at 14%, plus accrued interest in the amount of $2,846.19, a copy of said note being attached hereto marked Exhibit 'A' and made a part hereof." The note attached to the complaint as Exhibit "A" is one dated March 25, 1975, in the principal sum stated in the complaint, and due June 25, 1975, providing for interest at 14% per annum until paid, and stating the amount to the due date as being $1,685. Stamped on the face of the note is the word "renewed." Paragraph 8 of the complaint alleged the defendants were advised by letter dated May 23, 1975, that "the plaintiff felt that it was insecure in this indebtedness" and therein declared the entire principal and interest due and payable. The security agreement executed simultaneously with the original note provided "if the Bank at any time feels insecure for any reason whatsoever, it may at its option thereupon or thereafter declare" the debt due and payable. This letter also contained a notice of attorney fees for the sum of 15% of the entire balance of principal and interest if not paid within 10 days. There is no allegation that the letter was properly addressed, stamped and mailed. Both paragraph 4 and paragraph 8 of the petition were denied in the defendant's answer. Paragraphs 4 and 5 of the answer read as follows:

"4. Further answering Paragraph 4, these Defendants show that on September 25, 1974, when Defendant Mother's Bottle Shoppe, Ltd. first created the indebtedness sued upon, Plaintiff's then President, Mr. Warren Woolsey, agreed with both Defendants that the principal amount sued for herein would not be due for

one year from September 25, 1974, and at that time a discussion would take place between all the parties as to amortization of the principal amount.

"5. Further answering Paragraph 8, Defendants show that any insecurity the Plaintiff contended that it felt was false and unreasonable and was done solely to enable the Plaintiff to breach its contract with the Defendants and to 'call this debt.' The notice of intention of Plaintiff to collect attorney's fees was rescinded by them by proposals and correspondence dated July 22 and 30, 1975."

In its counterclaim, the defendant admitted the execution of the note attached to the complaint in Exhibit "A," and further alleged that as a part of the transaction the former president of the plaintiff Bank "committed the Bank to the renewal of the obligation without reduction until April 14, 1976," and that "because of the fact that plaintiff has instituted these proceedings against these defendants, harrassed them, and rendered unstable the general condition of both of these defendants," a party to whom the defendants had agreed to sell the business and who had agreed to purchase, decided not to complete the purchase for the proposed consideration of $100,000; and that as a result thereof the defendants have suffered damages in the amount of $38,000.

The complainant on October 29, 1975, moved for summary judgment both as to the action and the counterclaim, attaching an affidavit of an officer of the corporation. On October 29, the same date the motion for summary judgment was filed and set for hearing on December 4, the defendant was served with certain requests for admissions, which included an admission that he had received the letter of May 23, 1975, relating to the acceleration of the due date of the note and the notice of attorney fees, as well as other matters relating to the case. No answers were ever filed to these requests for admissions. The affidavit of the officer showed that a note dated September 25, 1974, in the principal amount of $45,000 with interest at the rate of 14% per annum until paid, due 180 days after date and showing interest to the due date in amount of $3,150 was executed by the

defendants for an original loan in the amount of $45,000, and that the note attached to the complaint bearing date of March 25, 1975, was a renewal of the above note, with the accrued interest of $3,150 being included in the renewal note as principal, which renewal was made without any payment of principal or interest on the note of September 25, 1974. This affidavit further showed that no payments had been made on any of the notes. This affidavit also established the amount due upon the note sued upon. The affidavit contained nothing in reference to the acceleration of the due date of this note because the bank felt itself insecure, and no proof was made as to this area of the case other than such statement was made in the letter of May 23, 1975, which defendants in failing to answer the request for admissions acknowledged receiving on June 19, 1975. The affidavit of the president, however, stated "that when said note came due on June 25, 1975, the defendant failed to renew the same and/or make any payment of the same, and demand was made upon the Defendant Mother's Bottle Shoppe, Ltd., and William G. Kinsey as President in his individual capacity for payment of the entire sum plus interest and attorney fees." How this demand, if made after June 25, 1975, was made, whether orally or in writing does not appear.

1.   That an erroneous date of the note (the date of the original) was alleged in the complaint, whereas, a renewal thereof was attached to the complaint would not preclude a judgment on the attached note, if otherwise justified. Such judgment would be proper, irrespective of the erroneous date alleged in the complaint, as the attached exhibit would control over the allegations of the complaint. See *Gaines v. Sheldon Simms Co.,* 119 Ga. App. 870 (169 SE2d 126); *Twisdale v. Ga. R. Bank &c. Co.,* 129 Ga. App. 18 (198 SE2d 396).

2.   The evidence adduced demanded a finding that the defendants were liable on the note and guaranty agreement for principal and interest, but there is a dispute as to the facts relating to the question as to whether attorney fees were recoverable. While a notice purportedly accelerating the due date, as well as notifying as to the claim of attorney fees, was dated on

May 23, 1975 and received June 19, 1975, the defendant's vice president, in his affidavit, testified the note became due June 25, 1975, at which time demand was made for the payment of principal, interest and attorney fees. If, as thus testified, the note did not become due until June 25, 1975, according to its terms the written notice of the claim of attorney fees sent by plaintiff's attorney was premature. Further, the answer disputes that the acceleration attempted was not supported by a "reason," but was "false and unreasonable" and done solely to enable plaintiff to breach its contract with the defendant. There was no evidence whatsoever disputing this claim of the defendant, and until this pleading of the defendant is pierced on plaintiff's motion for summary judgment, the summary judgment as to this area is unauthorized. See *Dunbar v. Green,* 229 Ga. 829 (194 SE2d 435). It follows that the right to the acceleration being in issue by the unpierced pleading, the notice of attorney fees based upon such accelerated due date, and the right to such fees based upon the letter is also in issue. The affidavit of the vice president does not show that an additional notice of attorney fees was given but only that after June 25, 1975, a demand was made for the payment of principal, interest and attorney fees. The summary judgment as to attorney fees was unauthorized.

3. There was no evidence whatsoever produced in reference to the defendant's counterclaim and based upon the allegation that the former president of plaintiff bank "committed the bank to the renewal of the obligation without reduction until April 14, 1976." If this commitment was a legal one, the counterclaim was good on its face and presented an issue for trial, both as to the breach and the damages. Plaintiff contends, however, that inasmuch as this allegation was an attempt to vary the written contract by parol, the counterclaim failed to state a claim upon which a relief could be granted, and thus summary judgment against the counterclaim was proper. We might agree if this "commitment" is strictly oral; but the pleading on the face thereof does not so show; neither does the evidence. As to this affirmative defense, as alleged, there is no evidence piercing the pleadings, and the trial judge, therefore, erred in

sustaining the plaintiff's motion for summary judgment against the counterclaim and in entering judgment against the defendant on the note prior to the counterclaim being determined. See *Mays v. C. & S. Nat. Bank,* 132 Ga. App. 602 (2) (208 SE2d 614).

*Judgment reversed. Marshall and McMurray, JJ., concur.*

ARGUED APRIL 7, 1976 — DECIDED JUNE 15, 1976 —
REHEARING DENIED JULY 6, 1976.

*G. Robert Howard,* for appellants.
*Dillard, Dillard & Shearer, G. Douglas Dillard,* for appellee.