## 57960. IVEY CONTRACTING COMPANY v. ELLIOTT.

CARLEY, Judge.

Suit was brought against Ivey Contracting Company (Ivey) on a promissory note executed by Ivey's president for the purpose of financing insurance policies written by Elliott, an insurance agent. It was alleged that Ivey had defaulted and that Elliott, as guarantor, had been forced to pay, thereby becoming the holder of the note. Elliott's original demand was for $20,732.19. Ivey answered, alleging, inter alia, that Elliott had cancelled the policies, resulting in a refund of unearned premiums which had been paid to Elliott and for which Ivey was entitled to credit against the note.

Ivey also counterclaimed against Elliott, the allegations being that he had "intentionally, fraudulently and wilfully" represented that Ivey's insurance coverage "would be current and would remain in full force and effect upon payment of $1,000.00," when he "knew that notices of cancellation had already been prepared on said policies and said policies were in fact cancelled" contrary to his representations. It was further alleged that Ivey had relied upon the "false and

fraudulent misrepresentation" that its insurance would remain in full force and effect and had suffered as a consequence $10,000 in damage.

Elliott subsequently amended his complaint to reflect a $13,702.23 payment made by Ivey to him and reduced his claim by the corresponding amount. He thereafter moved for summary judgment on the balance due on the note, $7,029.96. Summary judgment was denied. Both sides then engaged in extensive discovery. Elliott then made a "renewed" motion for summary judgment against Ivey and also a motion for summary judgment on Ivey's counterclaim. After a hearing, the trial court granted both of Elliott's motions for summary judgment. Ivey appeals.

1. Although Ivey admitted that the signature on the promissory note sued on was the genuine signature of its president, it urges on appeal that there remain issues of material fact with regard to its liability on the note. Our study of the record indicates that this argument is not viable. Elliott's affidavit and the affidavit of the commercial officer of the lending bank establish that Elliott paid the note pursuant to his guaranty of payment and that the note was thereupon transferred to him as the holder. And there is no genuine issue as to the amount due under the note. "Once the signature on the note was admitted by [Ivey, it] then had the burden of establishing any affirmative defense [it] might have to [Elliott's] action. [Cits.] The deposition thereafter discloses that [Ivey's president] when requested to explain how the note was in error or was a mistake of fact (which he apparently was contending was due to the failure to give credit for cancellation of the insurance policy for which the note had been given) was unable to explain how there was an error or how much the note was in error as to the amount due . . . [Ivey] had the duty to present [its] case at the hearing after the admission of the execution of the note created a prima facie case. [Ivey] failed to rebut same, and the court did not err in awarding a summary judgment against [it]. [Cits.]" *Orr v. Woodruff-Robinson, Inc.,* 142 Ga. App. 861, 862 (2) (237 SE2d 463) (1977).

2. Nor does the fact that Elliott's previous motion for summary judgment on the note had been denied require a

contrary holding. After the original denial of Elliott's motion the record was expanded to include additional evidence secured through discovery procedures. Granting Elliott's second motion for summary judgment was not error. *Keller Bldg. Products v. Young,* 137 Ga. App. 682, 684 (1a) (224 SE2d 815) (1976); *Ellington v. Tolar Const. Co.,* 142 Ga. App. 218, 219 (1) (235 SE2d 729) (1977).

3. Ivey next urges that it was error to grant Elliott's motion for summary judgment as to its counterclaim. The counterclaim alleged that Elliott "intentionally, fraudulently and wilfully" represented that Ivey's insurance coverage would be current and remain in force and effect upon payment of $1,000, all the while knowing that cancellation notices had already been prepared and that its policies were to be cancelled. It further alleged reliance on this representation and damages resulting therefrom.

"Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of the falsehood constitutes an essential element . . ." Code Ann. § 105-302. It is thus seen that Ivey's counterclaim states a claim upon which relief can be granted on the basis of fraudulent misrepresentation. See, e.g., *Gem City Motors, Inc. v. Minton,* 109 Ga. App. 842 (1a) (137 SE2d 522) (1964).

Elliott denies that the representation was made by him. And in support of the grant of summary judgment in his favor he argues that the allegations of the counterclaim were pierced with reference to Ivey's "justifiable reliance," in that Ivey did not exercise diligence to discover the truth or the falsity of the representation. *Maxey-Bosshardt Lumber Co., Inc. v. Maxwell,* 127 Ga. App. 429 (193 SE2d 885) (1972); *Shivers v. Sweda International, Inc.,* 146 Ga. App. 758 (247 SE 2d 576) (1978). However, unlike those cases, the circumstances shown at bar do not demonstrate a manner in which Ivey could have discovered the falsity of the representation (which we must assume for summary judgment purposes Elliott made) that he would not in the

future cancel *existing* insurance coverage; Ivey's assertion that the misrepresentation was made and Elliott's denial creates a factual question which must be resolved by a jury.

Nor do we believe that Ivey's counterclaim has been pierced by a showing that no damage resulted to it as a consequence of the alleged misrepresentation, even though the record demonstrates that Ivey's evidence in this regard is, at best, equivocal. " '[A]lthough the general rule is that upon the trial of the case the testimony of a party litigant, where self-contradictory or ambivalent, must be construed against him, yet on motion for summary judgment made by a party upon whom the burden of proof does *not* lie on the trial of the case, all evidence must be construed against the movant and in favor of the party opposing the motion. [Cit.] . . .' " *Roberson v. Home Ins. Co.,* 149 Ga. App. 590, 592 (254 SE2d 908) (1979).

We have carefully analyzed the record and, construing the evidence most favorably for Ivey and against Elliott as we must on summary judgment, we conclude that the evidence contained therein does not pierce Ivey's pleading as to its counterclaim against Elliott for fraudulent misrepresentation. Therefore, grant of summary judgment to Elliott on the counterclaim was error. Code Ann. § 81A-156 (c). Compare *Plunkett v. Avery,* 134 Ga. App. 204 (213 SE2d 503) (1975).

4. Ivey argues that if Elliott was erroneously granted summary judgment on its counterclaim, as we have so held, his summary judgment on the note must be reversed. The authority cited for this proposition is *Rubel Baking Co. v. Levitt,* 118 Ga. App. 306 (163 SE2d 437) (1968): "While some of the items sued for are admitted to be owing, the general rule is that where the defendant urges a legally sufficient counterclaim for an amount in excess of the amount demanded in the petition, *the denial of the motion* in toto will ordinarily be affirmed. [Cits.]" (Emphasis supplied.) We deal here, however, not with the denial of motions for summary judgment, but rather with the grant of such motions. For the reasons discussed in Division 1, supra, the grant of summary judgment to Elliott on the main action on the note was not erroneous

insofar as it determined Ivey's liability thereunder. Compare *Kinsey v. Fidelity Nat. Bank,* 139 Ga. App. 217, 220 (2) (228 SE2d 161) (1976). The question we must decide is whether an otherwise properly granted motion for summary judgment on the main action must be reversed when the movant is also erroneously granted summary judgment on a counterclaim.

Had the trial court denied Elliott's motion as to the counterclaim and granted his motion as to the main action on the note, subject to a determination of the merits of the counterclaim, no error would be shown. *Cobb County Syndicate I v. Frederick W. Berens, Inc.,* 144 Ga. App. 775 (242 SE2d 629) (1978). Did the court err when it granted a money judgment to Elliott for the amount demanded in his complaint after granting him summary judgment as to Ivey's counterclaim? "In [entering a final judgment the trial court] erred, because the recovery of plaintiff could be lessened by a recovery by the defendant on the counterclaim, or if the amount of the counterclaim recovery be sufficient, even secure a recovery against the plaintiff over and above the amount of the plaintiff's claim . . ." *Mays v. C. & S. Nat. Bank,* 132 Ga. App. 602, 606 (208 SE2d 614) (1974). However, unlike *Mays* the final order here was made *after* the trial judge had granted, albeit erroneously, Elliott's summary judgment motion as to the counterclaim. And, unlike *Kinsey,* supra, the final order here was made after the trial judge had *properly* granted Elliott's motion for summary judgment on the note. We see no reason why Elliott, having once demonstrated his entitlement to summary judgment as to Ivey's liability on the note, should be required to do so again. No error exists as to the finding of Ivey's liability on the note. If the final order granting summary judgment to Elliott on the note harms Ivey, it does so only insofar as it grants a presently enforceable money judgment in the liquidated amount which the trial court found to be due and owing on the note since there is a possibility it may recover an amount on its counterclaim which will be set off against the judgment or, perhaps, even exceed it. Any harm to Ivey in this regard would be negatived by our affirming the final order granting summary judgment to Elliott on the note with direction that the amount of his recovery against

Ivey—for which a fi. fa. will issue after trial on the counterclaim—be reduced by the amount, if any, that Ivey may recover on its counterclaim. This would have the beneficial, economical and overall just effect of dispensing with the requirement that Elliott again demonstrate his right to summary judgment on the note, while protecting Ivey from enforcement of a money judgment until such time as the merits of its counterclaim may be established. Accordingly, the order granting summary judgment to Elliott on Ivey's counterclaim is reversed; the order granting summary judgment to Elliott on the note is affirmed with direction that the amount of the money judgment be reduced by an amount equal to Ivey's recovery, if any, on its counterclaim.

5. Elliott's motion for damages under Code Ann. § 6-1801 is denied.

*Judgment affirmed in part with direction and reversed in part. Deen, C. J., and Shulman, J., concur.*

ARGUED MAY 29, 1979 — DECIDED SEPTEMBER 5, 1979 — REHEARINGS DENIED SEPTEMBER 18, 1979 — 

*D. W. Rolader,* for appellant.
*Robert E. Price,* for appellee.

